# BIDDING PROCEDURES

The following procedures (the "Bidding Procedures") have been approved and authorized by order dated November  , 2010 (the "OSH") of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the chapter 11 case of YL West 87th Street LLP, debtor and debtor-in-possession (the "Debtor"), under Case No. 09-16786 (AJG) and shall govern any auction (the "Auction") conducted by the Debtor in connection with the proposed sale (the "Sale") of the Debtor's land and building known commonly as 101 West 87th Street, New York, New York and certain other assets, including the real estate leases related thereto (collectively, the "Assets," as more particularly described in the in the Contract between 101W 87th LLC (the "Stalking Horse Bidder") and the Debtor, attached to the Debtor's Motion[1] seeking approval of the OSH.  The OSH schedules a hearing to conduct the Auction, approves procedures for resolving objections to assumption and assignment of leases with tenants ("Leases") and collective bargaining agreement (the "CBA) between the Debtor and Local 32BJ of the Service Employees International Union CTW, CLC (and together with the Leases, collectively, the "Executory Contracts"), and grants related relief pursuant to 11 U.S.C. §§ 105(a), 363 and 365:

1. Sale of Assets.  The Assets shall be sold in accordance with the Contract.

2. Bid Deadline.  In order to make a bid to purchase the Assets and be a Qualified Bidder (as defined below), on or before December 3, 2010 at 3:00 p.m. EST (the "Bid Deadline"), each potential bidder must serve a written intention to bid on the Assets upon counsel to the Debtor, the secured lender and the Committee (collectively, the "Counsel").

3. Qualification of Bidders.  Before the Bid Deadline, the Debtor may qualify potential bidders ("Qualified Bidders") that meet the following qualifications in advance of the Bid Deadline:

    (i) the bidder has provided Counsel with sufficient written information (by way of bank statements, commitment from a reputable financial institution, evidence of outstanding credit lines or otherwise) without delay, including a letter from a bidder's bank or other lender's confirmation that the bidder has unused credit available in excess of $48,500,000 or such higher amount that is as high as bidder may wish to bid to demonstrate the potential bidder's ability to consummate its purchase of the Assets.

    (ii) the bidder has performed and completed its due diligence with respect to the Assets.  In advance of the Bid Deadline, the Debtor will provide potential bidders with reasonable access to information directly related to the Assets promptly following requests for such information and upon an

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Contract.

appropriate agreement of confidentiality as may be requested by the Debtor.

(iii) the bidder has provided Counsel with a bid substantially in the form of the Contract setting forth all terms upon which such bidder is willing to purchase the Assets, with the Contract marked to reflect any modifications and deliver to Debtor's Counsel a $4,850,000 good faith deposit (the "Deposit") by bank or certified check.

4. <u>Bid Requirements</u>. The Debtor shall consider only those bids that satisfy all of the terms and conditions set forth herein (each, a "Qualified Bid"). A Qualified Bid shall be:

(i) made by a Qualified Bidder;

(ii) in writing in substantially the same form as the Contract and submitted to Counsel and specify the identity of the bidder, and be accompanied by the financial information identified in 3(i), above, that will evidence the bidder's ability to conclude Sale;

(iii) for not less than $48,500,000, all cash and not contingent upon receipt of financing necessary to its consummation, which sum includes the Break-up Fee for the Stalking Horse Bidder and the next Highest Offer (as those terms are defined below;

(iv) unconditional in all respects, including not conditioned on the outcome of unperformed due diligence with respect to the Assets and must be expressly made subject to the Debtor's obligation to pay the Break-Up Fee pursuant to the terms of the Contract;

(v) received by no later than the Bid Deadline; and

(vi) accompanied by the Deposit, which shall be forfeited as liquidated damages if the Qualified Bidder becomes the Successful Bidder (defined below) and fails to close by reason of its breach or default.

5. Neither bids nor any other information related to the Sale shall be disclosed or shared among bidders;

6. <u>Qualified Bidder's Duty to Provide Additional Information</u>. Upon receipt of a Qualified Bid, the Debtor may communicate with the Qualified Bidder who submitted such Qualified Bid before the Auction and at any time thereafter, and such Qualified Bidder shall promptly provide to the Debtor, after the Debtor's request therefor, any information reasonably required by the Debtor in order to evaluate such Qualified Bid.

7.     Auction.

(A)  Upon the Debtor's receipt of a Qualified Bid from a Qualified Bidder, the Debtor is authorized to auction the Assets in accordance with the terms and conditions outlined herein. **The Auction shall be conducted by Debtor's Counsel, at the United States Bankruptcy Court, Southern District of New York, Room 523, One Bowling Green, New York, New York.** The Auction shall be on invitation to each Qualified Bidder who has submitted a Qualified Bid, or such other persons as the Debtor may allow, provided such person(s) otherwise satisfy the requirements set forth herein, to determine whether the Contract or any higher and better offer(s) will be presented to the Court for approval at the Sale Hearing. Only Qualified Bidders will be permitted to bid at the Auction, it being expressly understood that the Stalking Horse Bidder is a Qualified Bidder in accordance with paragraph 3 hereof. Qualified Bidders who have complied with the Bidding Procedures may improve their bids at the Auction. Any Qualified Bidder who wishes to participate in the Auction must be physically present by a representative with authority to irrevocably bind such Qualified Bidder. **The Auction shall commence at 9:30 a.m. prevailing Eastern Time on December 8, 2010.**

(B)  The opening bid at the Auction shall be the purchase price set forth in the Contract between the Debtor and the Stalking Horse Bidder in the amount of $48,000,000 (the "Stalking Horse Bid") and the next highest and best Qualified Bid shall not be for less than $48,500,000 (the "Next Highest Offer"). Any party making a bid against the Contract must deliver to Debtor's the Deposit described herein. The Debtor may thereafter offer the Assets in successive rounds of bidding as the Debtor determines to be appropriate so as to obtain the highest or otherwise best bid for the Assets, **however each offer at the Auction must exceed the prior offer by not less than $250,000 (the "Bid Increment").**

(C)  With respect to any subsequent bid by the Stalking Horse Bidder, the Stalking Horse Bidder shall be entitled to credit bid the full amount ($250,000) of the Break-Up Fee (as defined in the Contract) as part of the consideration being offered by the Stalking Horse in each such subsequent bid. Any Offer submitted at the Auction that the Debtor determines to be the highest and best offer for the Assets shall become the successful bid (the "Successful Bid").

(D)  At the conclusion of the Auction, the Debtor will announce the Successful Bid and the second highest and best bid (the "Back-Up Bid"). The holder of the Successful Bid (the "Successful Bidder") shall supplement its deposit by wire transfer or other immediately available funds within one (1) business day so that, to the extent necessary, such deposit equals ten percent (10%) of the Successful Bid (the "Additional Deposit") and shall deliver an executed Contract in substantially the same form as the Contract.

(E)  If the Stalking Horse Bidder is not the Successful Bidder or the Back-Up Bidder (defined below), the Debtor shall return to the Stalking Horse Bidder its Deposit within two (2) business days following the Auction.

(F)  If, for any reason, the Successful Bidder fails to consummate the purchase of the Assets or submit the Additional Deposit, the Successful Bidder shall forfeit its Deposit and the holder of the Back-Up Bid (the "Back-Up Bidder") will automatically be deemed to have submitted the highest and best bid.  In that event, the Debtor shall be authorized to effect the sale of the Assets to the Back-Up Bidder as soon as is commercially reasonable, but no later than two (2) business days following Back-Up Bidder's receipt of notice (the "Notice") by fax, email and telephone from Debtor's counsel that its offer has been accepted, following entry of an order approving the Debtor's Plan of Reorganization (the "Confirmation Order") except as otherwise provided in the Contract. Notwithstanding anything in these Bidding Procedures to the contrary, for all purposes the timing of a Closing in which the Stalking Horse Bidder is the purchaser shall be governed by Section 5 of the Contract.  Upon closing the sale of the Assets, the Debtor shall promptly return the Bid Deposit to the Stalking Horse Bidder or the Back-Up Bidder, as applicable.

(G)  If the Successful Bidder's failure to consummate the purchase is the result of a breach or default by the Successful Bidder, as the case may be, the Successful Bidder's Deposit and any Additional Deposit shall be subject to the rights and remedies of the Debtor as set forth in the Contract.  The Debtor shall retain the Back-Up Bidder's Bid Deposit for the later to occur of seven (7) days after entry of the Confirmation Order or the day following the closing with the Successful Bidder.  If the Back-Up Bidder fails to consummate the purchase within two (2) business days after receipt of the Notice, as the result of a breach or default by the Back-Up Bidder, the Back-Up Bidder's Deposit shall be subject to the rights and remedies of the Debtor as set forth in the Contract.

8.      Escrow of Deposits.  Deposits and Additional Deposits, together with interest thereon (collectively, the "Deposit(s)") shall be held by Debtor's counsel in an interest bearing bank account.  Within two (2) business days following entry of the Sale Order, Deposits shall be returned to all bidders except the Successful Bidder(s) and Back-Up Bidder(s).  If the sale of the Assets to the Successful Bidder closes, the Successful Bidder's Deposit shall be applied to the purchase price at closing, and the Back-Up Bidder's Deposit returned to the Back-Up Bidder as provided above.

9       Reservation of Rights to Change Terms of Sale.  The Debtor reserves the right to (i) impose additional or different terms and conditions at or before the Auction, but only to the extent such additional or different terms are not inconsistent with the intent of the Bidding Procedures or the Contract, and (ii) reject any or all bids, other than the Stalking Horse Bid, if, in the Debtor's reasonable judgment such bid is (A) inadequate or insufficient, (B) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the

terms and conditions of the Sale set forth herein, or (C) contrary to the best interest of the Debtor or its estate.

10.  Objections.  Any objection to the sale or the assumption and assignment of the Executory Contracts to be assumed and assigned under the Contract including, but not limited to, any objection relating to any cure amount and/or to adequate assurance of future performance, must be filed with the Bankruptcy Court and served so that it is received by Debtor's counsel by no later than 3:00 p.m. on December 3, 2010.

   (A)  Any objection must set forth in detail the factual and legal grounds on which it is based, and all relevant supporting documentation must be attached to the objection.  If an objecting party disputes the proposed cure amount, if any, the objection must identify the cure amount that the objecting party alleges to be accurate.  The Debtor asserts that there are no defaults or cures due in connection with the Executory Contracts.

   (B)  If a timely objection is filed, it will be considered at the hearing to consider approval of the Sale ("Sale Hearing").  The Debtor shall cooperate with any objecting party in a good faith effort to resolve any objection prior to the Sale hearing.

   (C)  If no objection to the assumption and assignment of a particular lease or contract is timely filed, then (i) the cure amount set forth in the cure schedule, listed on Schedule "A" to the Contract for the Executory Contracts, shall be binding upon the non-debtor party and will constitute a final determination of the total cure amount required to be paid in connection with the assumption and assignment of such Executory Contracts, (ii) the non-debtor party shall be deemed to have consented to the assumption and assignment of such Executory Contracts, and (iii) the non-debtor party shall be barred and estopped from asserting against the Debtor or any purchaser that any additional amounts are due or other defaults exist under such Executory Contracts.

11.  Closing:  The "Closing" to the Successful Bidder(s) shall take place in accordance with Section 5 of the Contract at the law offices of Paul Hastings, Janofsky & Walker LLP, 75 East 55th Street, New York, NY 10022-3205.

   (A)  At the Closing, the Successful Bidder, or the Back-Up Bidder, as the case may be, shall be obligated to pay, in cash, by confirmed wire transfer, the purchase price approved by the Court, less any Deposit, plus any other ordinary and necessary closing costs normally borne by a purchaser in transactions of this type as may be required.

   (B)  In the event the Successful Bidder fails to close, the Debtor shall be authorized to close with the Back-Up Bidder.