UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:

YL WEST 87th STREET, LLC,

Debtor.
--------------------------------------------------------x

**Return Date:** **December 8, 2010**
**@ 9:30 a.m.**

**Objection Date:** **December 3, 2010**
**@ 3:00 p.m.**

Chapter 11
Case No. 09-16786 (AJG)

## ORDER APPROVING (A) THE TERMS FOR SUBMISSION OF COMPETING OFFERS, THE BIDDING PROCEDURES, THE FORM OF THE PROPOSED CONTRACT OF SALE, AND THE FORM OF NOTICE OF ENTRY OF THIS ORDER AND; (B) SETTING THE AUCTION SALE DATE; (C) APPROVING PROCEDURES FOR RESOLUTION OF OBJECTIONS TO ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS; AND (D) GRANTING RELATED RELIEF

**UPON**, the motion (the "Motion") of YL West 87th Street, LLC, debtor and debtor-in-possession (the "Debtor") dated November , 2010 for the entry of this Order Scheduling Hearing that: (1) approves the terms for submission of competing offers, establishes bidding procedures for competing bids to purchase the Debtor's land and buildings located at 101 East 87th Street, New York, New York ("Real Property") and related assets including furniture fixtures and equipment ("FF&E"), leases with tenants (the "Leases") and the collective bargaining agreement (the "CBA") between the Debtor and Local 32BJ of the Service Employees International Union CTW, CLC (the "Union") (hereinafter the Real Property, the FF&E, the Leases and the CBA shall be collectively referred to as the "Assets"); (2) authorizes the Debtor to enter into a contract of sale with 101W87LLC (the "Contract"), and approves the form of the Contract, subject to higher or better offers made at an auction sale of the Assets; (3) schedules the date for an auction sale of the Assets pursuant to the Contract; (4) sets procedures for resolution of objections to Assumption and

Assignment of the Leases and the CBA; and (5) grants other related relief; and Counsel to the Committee of Unsecured Creditors (the "Committee") having consented to entry of this order Scheduling Hearing; and it appearing that the bidding procedures annexed as Exhibit "A" to the Motion (the "Bid Procedures"), the form of the Contract annexed as Exhibit "C" to the Motion, and scheduling an auction sale, together with a hearing to approve the sale is necessary and would be beneficial to the Debtor, its estate and the creditors; and no previous motion for similar relief having been made; and after due deliberation and sufficient cause appearing therefor, it is hereby:

**ORDERED,** that the proposed form of Contract, annexed to the Motion as Exhibit "C" be and it hereby is approved as to form, provisions and content and the Debtor is hereby authorized to execute the Contract on an interim basis, subject to final approval of this Court at the auction sale scheduled herein; and it is further

**ORDERED,** that the Bid Procedures detailed on Exhibit "A" to the Motion, be and the same hereby are approved; and it is further

**ORDERED,** that the form of the notice and its exhibits including the Bid Procedures and the Eastdil Notice (as that term is defined in the Motion) annexed as Exhibit "B" to the Motion (the "Notice"), of the entry of this order is approved in all respects; and it is further

**ORDERED,** that December 8, 2010 at 9:30 a.m., be and it hereby is scheduled as the date and time for the Debtor to conduct an auction sale of the Assets before the Honorable Arthur J. Gonzalez, United States Bankruptcy Judge, as more fully described in the Motion (the "Auction Sale") at the United States Bankruptcy Court, One Bowling Green, Courtroom No.523, New York, New York; and it is further

**ORDERED,** that any party wishing to submit a Qualified Bid as defined in the Bid Procedures, must submit such Qualified Bid in the form described and in compliance with the Bid

C:\Documents and Settings\lkar\Local Settings\Temporary Internet Files\OLKJD61\Order scheduling sale hearing 11 1 10.doc

2

Procedures, to the Debtor's attorney, Marilyn Simon & Associates, 110 East 59th Street, 23rd floor, New York, New York 10022, Attention: Marilyn Simon, Esq., fax (212) 759-7690, msimon@msimonassoc.com, with copies to Secured Lender's counsel, Paul Hastings Janofsky & Walker LLP, 75 East 55th Street, New York, NY 10022-3205, Attn: Harvey A. Strickon, Esq., direct fax (212) 230-7689, harveystrickon@paulhastings.com and counsel to the Committee, Tarter Krinksy & Drogin LLP, 1350 Broadway, 11th Floor, New York, NY 10018, Attn: Scott S. Markowitz, Esq., Fax: (212) 216-8001, smarkowitz@tarterkrinsky.com; and it is further

**ORDERED**, that the Debtor shall serve, by first class mail, a copy of the Notice upon: (i) members of the Committee; (ii) all persons who are known by the Debtor to have alleged liens upon or who have asserted a security interest in the Debtors' assets and their counsel, if known; (iii) all entities that have expressed an interest in purchasing the Assets and made unaccepted proposals with respect thereto; (iv) the United States Trustee; (v) the Core Group as that term is defined in the Case Management Order entered by this Court on April 23, 2010; (vi) all parties who have filed a Notice of Appearance herein and request for service of documents; (vii) counsel for the proposed purchaser of the Assets; and (viii) all parties to executory contracts being assumed and assigned, with all such service to be made within (2) business days from the date of the entry of this Order; and it is further

**ORDERED**, that the Debtor shall serve, by email, a copy of the Notice upon all other entities that received the initial Eastdil Notice of the availability of the Assets for sale, but did not make an offer to purchase the Assets; and it is further

**ORDERED**, that the Break-Up Fee (as defined in the Motion) in connection with the Auction Sale, in the sum of $250,000.00 is approved; and it is further

**ORDERED**, that the next highest bid shall be not less than $48,500,000.00, which includes

the Break-Up Fee and the minimum bid increment of $250,000.00, and it is further

**ORDERED,** that any objection to the relief sought in the Motion and approved by this order must conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court and be filed with the Bankruptcy Court electronically in accordance with General Order (General Order and the Attorney's Manual for the Electronic Case Filing System which can be found at www.nyeb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 2.5 inch disk, preferably in Portable Document Format (PDF), Corel Word Perfect, Microsoft Word, DOS text (ASCII) or a scanned image of the filing (with a hard copy delivered directly to Chambers) and be served in accordance with General Order so as to be received no later than 3:00 p.m. December 3, 2010 by the following parties: (i) counsel to the Debtor, Marilyn Simon & Associates, 110 East 59th Street, 23rd floor, New York, New York 10022, Attention: Marilyn Simon; (ii) counsel to the Committee, Tarter Krinksy & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018, Attn: Scott S. Markowitz, Esq.; the Office of the United States Trustee, 33 Whitehall Street, New York, New York 10004, Attn: Serene K. Katano, Esq.; (iii) counsel to the secured lender, Paul Hastings Janofsky & Walker LLP, 75 East 55th Street, New York, New York 10022-3205, Attn: Harvey A. Strickon, Esq., and (iv) counsel for the proposed purchaser, Cole Schotz Meisel Forman & Leonard, P.A., 25 Court Plaza North, Hackensack, New Jersey 07601, Attn: Warren A. Usatine, Esq.; and it is further

**ORDERED,** that if the objecting party disputes the proposed cure amount identified on the cure schedule set forth on Schedule "A" to Exhibit "K" to the Contract (the "Cure Schedule") the objection must identify the cure amount that the objecting party alleges to be accurate and attach documentation in support of the objection; and it is further

C:\Documents and Settings\lkarl\Local Settings\Temporary Internet Files\OLKD61\Order scheduling sale hearing 11 1 10.doc

4

**ORDERED**, if a timely objection is filed, it will be considered at the Auction Sale hearing and the Debtor shall cooperate with any objecting party in a good faith effort to resolve any objection prior the Auction Sale hearing; and it is further

**ORDERED**, that if no objection to the assumption and assignment of the Leases and CBA is timely filed, then (i) the cure amount set forth in the Cure Schedule due from the Tenants for the Leases (Exhibit "K" to the Contract") shall be binding upon the Tenants, (ii) the amount due under the CBA shall be the amount fixed by this court as the allowed claim of the Pension Funds (as defined in the CBA) and the Union under the CBA, and will constitute a final determination of the total cure amount required to be paid in connection with the assumption and assignment of the Leases and the CBA; (ii) the non-debtor party to the Leases and the CBA shall be deemed to have consented to the assumption and assignment of the Leases and CBA; and (iii) such non-debtor party shall be barred and estopped from asserting against the Debtor or any purchaser that any additional amounts are due or other defaults exist under the Leases or the CBA, and it is further

**ORDERED**, that any objection must set forth in detail the factual and legal grounds on which it is based, and all relevant supporting documentation must be attached to the objection, and it is further

**ORDERED**, that any interested party requiring additional information with regard to the Motion may contact counsel for the Debtor.

Dated: New York, New York
      November  , 2010

                                    _____
                                      UNITED STATES BANKRUPTCY JUDGE

CONSENTED TO ON BEHALF OF
THE OFFICIAL COMMITTEE
OF UNSECURED CRECITORS

By its Counsel
TARTER KRINKSKY & DROGIN LLP

By: _____
      Scott S. Markowitz
      Ira R. Abel

## **EXHIBIT C-2**

FORM OF ORDER CLARIFYING TENANTS' RIGHTS

(Attached)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:

**YL WEST 87th STREET, LLC,**

               Debtor.

------------------------------------------------------------x

Chapter 11
Case No. 09-16786 (AJG)

**ORDER PURSUANT TO 11 U.S.C.
§105(a) CONFIRMING TENANT
LEASE PROVISIONS AND GRANTING
RELATED RELIEF**

      YL West 87th Street, LLC, debtor and debtor in-possession (the "Debtor") filed

with this Court a (the "Motion") motion seeking confirmation that the Debtor's records

regarding the lease terms and rental provisions with its tenants as set forth in Exhibit "A"

to the Motion correctly reflect such terms and provisions and granting related relief; and

notice of the Motion having been mailed to each tenant scheduled on Exhibit "A" as well

as the Core Group as defined in the Case Management Order approved by the Court on

April 23, 2010; and the matter having duly come on to be heard before me on December

8, 2010 and upon the record of the hearing and the Court having determined that the

terms and provisions set forth on Exhibit "A" correctly reflect the term of each lease and

the rents thereunder, it is hereby

      **ORDERED, ADJUDGED AND DECREED,** that the provisions set forth on

Exhibit "A" to the Motion, correctly reflect the term of each lease and the rents

thereunder for each of the tenants listed on Exhibit "A"; and it is further

      ORDERED, ADJUDGED AND DECREED, that the tenant parties to each lease

identified in Exhibit "A" are hereby precluded from asserting any rights with respect to

their leasehold interests, that are inconsistent with the lease terms referenced in Exhibit

"A".


Dated: New York, New York
      , 2010


------------------------------------------------------

**UNITED STATES BANKRUPTCY JUDGE**

101 West 87th Street

| Tenant | Unit | Base Rent/mo | Lease Start | Lease Expiration | Deposit |
|---|---|---|---|---|---|
| **RESIDENTIAL** | | | | | |
| Patria and Lillian Fuentes | 2D | 775.57 | 8/1/2009 | 7/31/2010 | 725.40 |
| Ellen Berman | 2M | 887.93 | 11/1/2009 | 10/31/2011 | 887.93 |
| Maximina Martinez | 2N | 866.92 | 8/1/2009 | 7/31/2011 | 866.92 |
| Helen Chan | 3D | 796.23 | 11/1/2009 | 10/31/2011 | 796.23 |
| Ruth Rosenberg | 3E | 888.76 | 9/1/2009 | 8/31/2010 | 888.76 |
| Rob/Sam Sande | 3J | 1,157.45 | 11/1/2009 | 10/31/2011 | 1,035.00 |
| Adina Aldad & Iraj Uri Aldad (free market)** | 3L | 1,000.00 | 6/1/2006 | 5/31/2011 | 1,000.00 |
| Jaimie Perla (Emily Vergara, as sublessee) | 3M | 800.00 | 10/15/2009 | 10/14/2012 | 1,600.00 |
| Francis Chandler | 3N | 876.75 | 11/1/2009 | 10/31/2011 | 876.75 |
| Michael J. Spiegel (free market)*** | 3P | 750.00 | 8/1/2009 | 7/31/2011 | 750.00 |
| Gloria Anderson* | 4C | 826.20 | | | |
| Floyd Resnick | 4M | 922.60 | 11/1/2009 | 10/31/2011 | 922.60 |
| Nadeen Ayala | 4N | 967.33 | 11/1/2009 | 10/31/2011 | 967.33 |
| Peter Jeffries-Ferrara | 5C | 842.49 | 9/1/2009 | 8/31/2011 | 842.49 |
| Nancy Vasquez | 8J | 1,159.68 | 11/1/2009 | 10/31/2011 | 1,159.68 |
| Subtotal | | 13,517.91 | | | |

| Commercial Lease Description**** | Unit | Base Rent/mo | Lease Start | Lease Expiration | Deposit |
|---|---|---|---|---|---|
| Agreement of Lease dated as of June 17, 1994 between Black Cat Management Corp., as tenant ("Original Tenant"), and YL West 87th Street LLC (as successor-in-interest to KBF + Related Columbus Partners, Inc.), as landlord ("Landlord"),as amended, modified or otherwise supplemented by that certain Letter Agreement dated November 1, 2000 between Original Tenant and Landlord, and that certain First Amendment of Lease dated as of July 8, 2004 between Original Tenant and Landlord | STORE1 | $12,036.05 | 6/17/1994 | 6/30/2019 | $20,600.01 |
| Agreement of Lease dated as of February 23, 2005 between International Hair Fashion Inc. ("Tenant"), as tenant, and YL West 87th Street LLC (as successor-in-interest to Columbus Green, L.L.C.), as landlord ("Landlord"), as amended, modified or otherwise supplemented by that certain Guaranty by Saverio Coluccio dated as of February 23, 2005, and that certain Letter Agreement between Tenant and Landlord dated May 4, 2005 | STORE2 | $6,279.40 | 2/23/2005 | 5/31/2015 | $10,833.33 |
| None | STORE3 | Vacant | | | |
| Agreement of Lease dated as of November 1, 1994 between Earthwise Animal Products, Inc., as tenant ("Tenant"), and YL West 87th Street LLC (as successor-in-interest to KBF + Related Columbus Partners), as landlord ("Landlord"), as amended, modified or otherwise supplemented by that certain Lease Amendment & Modification Agreement dated August, 2009 between Landlord and Tenant | STORE4 | $9,000 | 11/1/1994 | 10/31/2009 | $14,400.00 |
| Agreement of Lease dated as of June 14, 2004 between Trevor Day School, as tenant ("Tenant"), and YL West 87th Street LLC (as successor-in-interest to Columbus Green, L.L.C.), as landlord ("Landlord"), as amended, modified or otherwise supplemented pursuant to that certain Lease Extension and Modification Agreement dated June 12, 2009 between Landlord and Tenant | STORE5 | $12,133 | 6/14/2004 | 6/30/2011 | $17,500.00 |
| Agreement of Lease dated as of July 8, 2004 between Black Cat Management Corp, as tenant ("Original Tenant") and YL West 87th Street LLC (as successor-in-interest to Columbus Green, L.L.C.) as landlord ("Landlord"), (collectively, the "Store 6 Lease"), which Store 6 Lease was assigned by Original Tenant to Black Cat II Management Corp. ("Black Cat II") pursuant to that certain Assignment and Assumption of Lease dated July 20, 2004, as amended, modified or otherwise supplemented by that certain Guaranty by Paul Howell dated July 13, 2004, as same was further assigned by Black Cat II to Center for Avian and Exotic Veterinary Medicine, PLLC, pursuant to that certain Assignment and Assumption of Lease dated January 25, 2005 | STORE6 | $9,114.60 | 7/8/04 (approximated by the Commencement Date) | 6/30/2019 | $7,633.33 |
| Agreement of Lease dated as of December 2, 1991 between New SMSA Limited Partnership, as tenant, and YL West 87th Street LLC (as successor-in-interest to KBF + Related Columbus Partners, Inc.), as landlord | WIRELESS | $11,068.21 | 12/1/1991 | 11/30/2011 | $0.00 |
| Subtotal | | $59,631.26 | | | |
| **Total Rent Roll** | | $73,149.17 | | | |

*No lease on record, unable to reach tenant, but listed with DHCR as  a stabilized tenant
**Tenant has a one-time one (1) year renewal option with written notice by 4/30/2011
***Tenant has a one-time one (1) year renewal option with written notice by 7/1/2011
**** No commercial tenants have renewal options

# **EXHIBIT D**

## FORM OF BID PROCEDURES

(Attached)

## BIDDING PROCEDURES

The following procedures (the "Bidding Procedures") have been approved and authorized by order dated November  , 2010 (the "OSH") of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the chapter 11 case of YL West 87th Street LLP, debtor and debtor-in-possession (the "Debtor"), under Case No. 09-16786 (AJG) and shall govern any auction (the "Auction") conducted by the Debtor in connection with the proposed sale (the "Sale") of the Debtor's land and building known commonly as 101 West 87th Street, New York, New York and certain other assets, including the real estate leases related thereto (collectively, the "Assets," as more particularly described in the in the Contract between 101W 87th LLC (the "Stalking Horse Bidder") and the Debtor, attached to the Debtor's Motion[1] seeking approval of the OSH. The OSH schedules a hearing to conduct the Auction, approves procedures for resolving objections to assumption and assignment of leases with tenants ("Leases") and collective bargaining agreement (the "CBA) between the Debtor and Local 32BJ of the Service Employees International Union CTW, CLC (and together with the Leases, collectively, the "Executory Contracts"), and grants related relief pursuant to 11 U.S.C. §§ 105(a), 363 and 365:

1.  Sale of Assets. The Assets shall be sold in accordance with the Contract.

2.  Bid Deadline. In order to make a bid to purchase the Assets and be a Qualified Bidder (as defined below), on or before December 3, 2010 at 3:00 p.m. EST (the "Bid Deadline"), each potential bidder must serve a written intention to bid on the Assets upon counsel to the Debtor, the secured lender and the Committee (collectively, the "Counsel").

3.  Qualification of Bidders. Before the Bid Deadline, the Debtor may qualify potential bidders ("Qualified Bidders") that meet the following qualifications in advance of the Bid Deadline:

    (i)    the bidder has provided Counsel with sufficient written information (by way of bank statements, commitment from a reputable financial institution, evidence of outstanding credit lines or otherwise) without delay, including a letter from a bidder's bank or other lender's confirmation that the bidder has unused credit available in excess of $48,500,000 or such higher amount that is as high as bidder may wish to bid to demonstrate the potential bidder's ability to consummate its purchase of the Assets.

    (ii)   the bidder has performed and completed its due diligence with respect to the Assets. In advance of the Bid Deadline, the Debtor will provide potential bidders with reasonable access to information directly related to the Assets promptly following requests for such information and upon an

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Contract.

appropriate agreement of confidentiality as may be requested by the Debtor.

(iii) the bidder has provided Counsel with a bid substantially in the form of the Contract setting forth all terms upon which such bidder is willing to purchase the Assets, with the Contract marked to reflect any modifications and deliver to Debtor's Counsel a $4,850,000 good faith deposit (the "Deposit") by bank or certified check.

4. <u>Bid Requirements</u>. The Debtor shall consider only those bids that satisfy all of the terms and conditions set forth herein (each, a "Qualified Bid"). A Qualified Bid shall be:

(i) made by a Qualified Bidder;

(ii) in writing in substantially the same form as the Contract and submitted to Counsel and specify the identity of the bidder, and be accompanied by the financial information identified in 3(i), above, that will evidence the bidder's ability to conclude Sale;

(iii) for not less than $48,500,000, all cash and not contingent upon receipt of financing necessary to its consummation, which sum includes the Break-up Fee for the Stalking Horse Bidder and the next Highest Offer (as those terms are defined below);

(iv) unconditional in all respects, including not conditioned on the outcome of unperformed due diligence with respect to the Assets and must be expressly made subject to the Debtor's obligation to pay the Break-Up Fee pursuant to the terms of the Contract;

(v) received by no later than the Bid Deadline; and

(vi) accompanied by the Deposit, which shall be forfeited as liquidated damages if the Qualified Bidder becomes the Successful Bidder (defined below) and fails to close by reason of its breach or default.

5. Neither bids nor any other information related to the Sale shall be disclosed or shared among bidders;

6. <u>Qualified Bidder's Duty to Provide Additional Information</u>. Upon receipt of a Qualified Bid, the Debtor may communicate with the Qualified Bidder who submitted such Qualified Bid before the Auction and at any time thereafter, and such Qualified Bidder shall promptly provide to the Debtor, after the Debtor's request therefor, any information reasonably required by the Debtor in order to evaluate such Qualified Bid.

7.  Auction.

(A)  Upon the Debtor's receipt of a Qualified Bid from a Qualified Bidder, the Debtor is authorized to auction the Assets in accordance with the terms and conditions outlined herein.  **The Auction shall be conducted by Debtor's Counsel, at the United States Bankruptcy Court, Southern District of New York, Room 523, One Bowling Green, New York, New York.**  The Auction shall be on invitation to each Qualified Bidder who has submitted a Qualified Bid, or such other persons as the Debtor may allow, provided such person(s) otherwise satisfy the requirements set forth herein, to determine whether the Contract or any higher and better offer(s) will be presented to the Court for approval at the Sale Hearing.  Only Qualified Bidders will be permitted to bid at the Auction, it being expressly understood that the Stalking Horse Bidder is a Qualified Bidder in accordance with paragraph 3 hereof.  Qualified Bidders who have complied with the Bidding Procedures may improve their bids at the Auction.  Any Qualified Bidder who wishes to participate in the Auction must be physically present by a representative with authority to irrevocably bind such Qualified Bidder.  **The Auction shall commence at 9:30 a.m. prevailing Eastern Time on December 8, 2010.**

(B)  The opening bid at the Auction shall be the purchase price set forth in the Contract between the Debtor and the Stalking Horse Bidder in the amount of $48,000,000 (the "Stalking Horse Bid") and the next highest and best Qualified Bid shall not be for less than $48,500,000 (the "Next Highest Offer").  Any party making a bid against the Contract must deliver to Debtor's the Deposit described herein.  The Debtor may thereafter offer the Assets in successive rounds of bidding as the Debtor determines to be appropriate so as to obtain the highest or otherwise best bid for the Assets, **however each offer at the Auction must exceed the prior offer by not less than $250,000 (the "Bid Increment").**

(C)  With respect to any subsequent bid by the Stalking Horse Bidder, the Stalking Horse Bidder shall be entitled to credit bid the full amount ($250,000) of the Break-Up Fee (as defined in the Contract) as part of the consideration being offered by the Stalking Horse in each such subsequent bid.  Any Offer submitted at the Auction that the Debtor determines to be the highest and best offer for the Assets shall become the successful bid (the "Successful Bid").

(D)  At the conclusion of the Auction, the Debtor will announce the Successful Bid and the second highest and best bid (the "Back-Up Bid").  The holder of the Successful Bid (the "Successful Bidder") shall supplement its deposit by wire transfer or other immediately available funds within one (1) business day so that, to the extent necessary, such deposit equals ten percent (10%) of the Successful Bid (the "Additional Deposit") and shall deliver an executed Contract in substantially the same form as the Contract.

(E) If the Stalking Horse Bidder is not the Successful Bidder or the Back-Up Bidder (defined below), the Debtor shall return to the Stalking Horse Bidder its Deposit within two (2) business days following the Auction.

(F) If, for any reason, the Successful Bidder fails to consummate the purchase of the Assets or submit the Additional Deposit, the Successful Bidder shall forfeit its Deposit and the holder of the Back-Up Bid (the "Back-Up Bidder") will automatically be deemed to have submitted the highest and best bid. In that event, the Debtor shall be authorized to effect the sale of the Assets to the Back-Up Bidder as soon as is commercially reasonable, but no later than two (2) business days following Back-Up Bidder's receipt of notice (the "Notice") by fax, email and telephone from Debtor's counsel that its offer has been accepted, following entry of an order approving the Debtor's Plan of Reorganization (the "Confirmation Order") except as otherwise provided in the Contract. Notwithstanding anything in these Bidding Procedures to the contrary, for all purposes the timing of a Closing in which the Stalking Horse Bidder is the purchaser shall be governed by Section 5 of the Contract. Upon closing the sale of the Assets, the Debtor shall promptly return the Bid Deposit to the Stalking Horse Bidder or the Back-Up Bidder, as applicable.

(G) If the Successful Bidder's failure to consummate the purchase is the result of a breach or default by the Successful Bidder, as the case may be, the Successful Bidder's Deposit and any Additional Deposit shall be subject to the rights and remedies of the Debtor as set forth in the Contract. The Debtor shall retain the Back-Up Bidder's Bid Deposit for the later to occur of seven (7) days after entry of the Confirmation Order or the day following the closing with the Successful Bidder. If the Back-Up Bidder fails to consummate the purchase within two (2) business days after receipt of the Notice, as the result of a breach or default by the Back-Up Bidder, the Back-Up Bidder's Deposit shall be subject to the rights and remedies of the Debtor as set forth in the Contract.

8. Escrow of Deposits. Deposits and Additional Deposits, together with interest thereon (collectively, the "Deposit(s)") shall be held by Debtor's counsel in an interest bearing bank account. Within two (2) business days following entry of the Sale Order, Deposits shall be returned to all bidders except the Successful Bidder(s) and Back-Up Bidder(s). If the sale of the Assets to the Successful Bidder closes, the Successful Bidder's Deposit shall be applied to the purchase price at closing, and the Back-Up Bidder's Deposit returned to the Back-Up Bidder as provided above.

9. Reservation of Rights to Change Terms of Sale. The Debtor reserves the right to (i) impose additional or different terms and conditions at or before the Auction, but only to the extent such additional or different terms are not inconsistent with the intent of the Bidding Procedures or the Contract, and (ii) reject any or all bids, other than the Stalking Horse Bid, if, in the Debtor's reasonable judgment such bid is (A) inadequate or insufficient, (B) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the

terms and conditions of the Sale set forth herein, or (C) contrary to the best interest of the Debtor or its estate.

10.     Objections. Any objection to the sale or the assumption and assignment of the Executory Contracts to be assumed and assigned under the Contract including, but not limited to, any objection relating to any cure amount and/or to adequate assurance of future performance, must be filed with the Bankruptcy Court and served so that it is received by Debtor's counsel by no later than 3:00 p.m. on December 3, 2010.

    (A)     Any objection must set forth in detail the factual and legal grounds on which it is based, and all relevant supporting documentation must be attached to the objection. If an objecting party disputes the proposed cure amount, if any, the objection must identify the cure amount that the objecting party alleges to be accurate. The Debtor asserts that there are no defaults or cures due in connection with the Executory Contracts.

    (B)     If a timely objection is filed, it will be considered at the hearing to consider approval of the Sale ("Sale Hearing"). The Debtor shall cooperate with any objecting party in a good faith effort to resolve any objection prior to the Sale hearing.

    (C)     If no objection to the assumption and assignment of a particular lease or contract is timely filed, then (i) the cure amount set forth in the cure schedule, listed on Schedule "A" to the Contract for the Executory Contracts, shall be binding upon the non-debtor party and will constitute a final determination of the total cure amount required to be paid in connection with the assumption and assignment of such Executory Contracts, (ii) the non-debtor party shall be deemed to have consented to the assumption and assignment of such Executory Contracts, and (iii) the non-debtor party shall be barred and estopped from asserting against the Debtor or any purchaser that any additional amounts are due or other defaults exist under such Executory Contracts.

11.     Closing: The "Closing" to the Successful Bidder(s) shall take place in accordance with Section 5 of the Contract at the law offices of Paul Hastings, Janofsky & Walker LLP, 75 East 55th Street, New York, NY 10022-3205.

    (A)     At the Closing, the Successful Bidder, or the Back-Up Bidder, as the case may be, shall be obligated to pay, in cash, by confirmed wire transfer, the purchase price approved by the Court, less any Deposit, plus any other ordinary and necessary closing costs normally borne by a purchaser in transactions of this type as may be required.

    (B)     In the event the Successful Bidder fails to close, the Debtor shall be authorized to close with the Back-Up Bidder.

**EXHIBIT E**

FORM OF SALE ORDER

(Attached)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

**YL WEST 87th STREET, LLC,**

Debtor.

-------------------------------------------------------------x

Chapter 11
Case No. 09-16786 (AJG)

## ORDER (i) AUTHORIZING THE SALE OF ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS, SUBJECT TO THE TERMS OF A CONTRACT OF SALE; (ii) APPROVING THE CONTRACT OF SALE; AND (iii) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

YL West 87th Street, LLC, debtor and debtor in-possession (the "Debtor"), filed with this

Court on November 1, 2010 a Motion (the "Sale Motion") for an Order Scheduling a Hearing

(the "OSH") pursuant to sections 105, 363, 365 and 507 of the Bankruptcy Code (i) Authorizing

the Sale of Assets of the Debtor free and clear of all liens, claims, interests, and encumbrances,

as well as the assumption and assignment of certain leases, subject to the terms of a Contract of

Sale (the "Contract") between the Debtor and 101W87 LLC (the "Buyer") and subject to higher

and better offers (the "Auction"), (ii) approving the Contract and, (iii) approving a stalking horse

agreement and procedures for the solicitation of higher and better bids (the "Bidding

Procedures"). And notice of the submission of the OSH and its exhibits having been given to all

creditors scheduled by the Debtor, including all creditors that have filed claims, and all entities

having conducted business with the Debtor since the commencement of this case as well as all

parties having expressed an interest in acquiring the Assets, and no objections to the OSH having

been asserted by any party, and the Court having entered the OSH on _____, 2010. And the

Court having conducted the Auction on December 8, 2010 and having considered the offers, the

statements of counsel, the evidence presented, the pleadings, and the record in this proceeding,

and being otherwise fully advised, the Court makes the following findings of fact and

conclusions of law and, pursuant thereto, enters the following order[1]:

## FINDINGS OF FACT

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:

### Jurisdiction, Final Order and Statutory Predicates

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. This Court has jurisdiction over this matter and over the property of the Debtor, including the Assets to be sold, transferred or conveyed pursuant to the Contract, and the Debtor's estate pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

### Appropriate Notice

D. As evidenced by the affidavits of service and publication filed with the Court by the Debtor's counsel: (1) proper, timely, adequate and sufficient notice of the Sale Motion, the OSH (including the Bidding Procedures), the Sale Hearing and the Auction has been provided under the particular circumstances; and (2) no other or further notice of the Sale Motion, Sale Hearing, the OSH, the Bidding Procedures, the Auction or the entry of this Order is necessary or shall be required.

### Good Faith

E. The Debtor is a good faith Seller and the Buyer is a good faith Buyer

---

[1]     Terms not otherwise defined shall have the meanings set forth in the Contract.

within the meaning of section 363(m) of the Bankruptcy Code, and as such the Debtor and Buyer are entitled to the protections of section 363(m) of the Bankruptcy Code. The Contract is the product of substantial, extensive, and good faith negotiations that were conducted at all times at arm's length and without collusion or fraud of any kind (including any conduct that would cause or permit the sale of the Assets to be avoided under section 363(n) of the Bankruptcy Code). The Bidding Procedures were complied with in all respects, which further evidences the good faith of the Debtor and Buyer and the absence of any collusion.

### The Debtor's Business Judgment

F.     Initial Marketing Process. By Order dated June 17, 2010, this Court approved the Debtor's retention of Eastdil Secured, L.L.C. ("Eastdil") to market and sell the Assets. After conducting a marketing process pursuant to which they sent notice to 393 entities that might have an interest in purchasing the Assets, 97 of which signed confidentiality agreements and received copies of the offering plan, 36 of which actually visited the real estate and toured the premises, 15 of which made bids for the Assets. Eastdil identified the Buyer and negotiated with Buyer a price for the Assets that exceeded the price offered by other interested parties.

G.     The Stalking Horse Bid. The Debtor entered into the Contract with the Buyer on November 1, 2010, pursuant to which the Debtor agreed to sell and assign its real estate assets consisting of the land and building located at 101 West 87th Street, New York, New York, together with all personal property located thereat, and certain agreements, leases, and tenancies related thereto (collectively, the "Assets") to Buyer for $48,000,000 (the "Purchase Price").

H.     The Sale Motion requested that the Court approve the sale of the Assets to Buyer pursuant to the Contract, subject to higher or better offers that may be made at an auction

scheduled by this Court (the "Auction").

I.        Concurrently with the filing of the Sale Motion as provided in the OSH the Debtor obtained Court approval of the Bidding Procedures and scheduled the Auction sale, together with a hearing to approve the sale of the Assets to the Buyer or such other successful bidder for the Assets.

J.        Copies of the Notice of Entry of the OSH and Sale Motion were served on (i) the Office of the United States Trustee; (ii) all persons who are known by Debtor to have liens upon or who have asserted a security interest in the Assets; (iii) all entities which have expressed to the Debtor an interest in purchasing the Assets; (iv) all parties who have filed requests for notice under Bankruptcy Rule 2002 and requests for service of documents; (v) counsel to the Official Committee of Unsecured Creditors and its members, counsel to the Buyer and to the Debtor's Secured Lender; (vi) all parties to any executory contracts proposed to be assumed and assigned by the Debtors; and (vii) all entities scheduled by the Debtor including entities that have filed claims in this case.

K.        The Bidding Procedures provided a full, fair and reasonable opportunity for any interested party to make an offer to purchase the Assets. The Debtor has complied with the Bidding Procedures in all respects [including conducting an auction on _____, 2010].

L.        The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner. All Qualified Bidders, including the Buyer, were present at and participated in the Auction.

M.       [Insert Auction results, if any.]

N.       The First Mortgage Holder's Approval of the Buyer's Bid and Auction Process. Garrison Residential Funding LLC ("Garrison") is the holder of the first lien on the Assets, and asserts a claim against the Debtor that exceeds the Purchase Price. Garrison has

consented to the marketing of the Assets pursuant to the Bidding Procedures, and has consented to the sale of the Assets to the Buyer pursuant to the Contract.

### Plan of Reorganization

O. The Debtor has filed a plan of reorganization (the "Plan") that would govern the distribution of proceeds from the sale of the Assets to the Buyer. If the Plan is confirmed by this Court, the sale of the Assets to the Buyer pursuant to the Contract, as approved herein, shall be treated for all purposes, including for purposes of 11 U.S.C. § 1146, as a transfer of estate property pursuant to a confirmed plan of reorganization.

### Approval of the Sale and Validity of Transfer

P. Approval of the Contract and the consummation of the sale of the Assets contemplated in the Plan is in the best interest of the Debtor's estate. The Court finds that the Debtor has articulated good and sufficient business reasons justifying the sale of the Assets pursuant to section 363 of the Bankruptcy Code and the sale is not subject to avoidance under section 363(n) of the Bankruptcy Code.

Q. One or more of the subsections in Section 363(f) of the Bankruptcy Code have been satisfied and, therefore, the sale of the Assets to Buyer free and clear of all liens, claims and interest, as described more fully herein, is warranted and appropriate.

R. The Debtor has full corporate power and authority to execute the Contract and any related agreements, and all other documents contemplated thereby. The sale of the Assets by the Debtor has been duly and validly authorized by all necessary corporate power and authority necessary to consummate the transactions contemplated by the Contract.

S. The Contract represents the highest and best offer for the Assets. The consideration to be paid by the Buyer to the Debtor, pursuant to the terms of the Contract, is fair and constitutes reasonably equivalent value under the Bankruptcy Code.

T.     The sale of the Assets pursuant to the Contract is not subject to any bulk sales law of the State of New York or any other jurisdiction.

### Successor Liability

U.     The transactions contemplated under the Contract do not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtor, there is no substantial continuity between the Buyer and the Debtor, there is no continuity of enterprise between the Debtor and the Buyer, the Buyer is not a mere continuation of the Debtor or the Debtor's estate and the Buyer does not constitute a successor to the Debtor or to the Debtor's estate.

V.     The transfer of the Assets to the Buyer shall not subject the Buyer, or any of its affiliates or subsidiaries, to any liability by reason of such transfer, including without limitation, under (1) the laws of the United States, any state, territory or possession thereof, or the District of Columbia, based in whole or in part on, directly or indirectly, including without limitation, any theory of anti-trust, environmental, products liability, successor or transferee liability, labor law, *de facto* merger or substantial continuity; or (2) any employment contract understanding or agreement, including, without limitation, collective bargaining agreements, employee pension plans or employee welfare or benefit plans.

### Assignment of Leases

W.     The assumption by the Debtor of the Leases and CBA and the assignment of same to the Buyer is a sound exercise of the Debtor's business judgment. The Debtor shall: (i) cure defaults, if any, by the Debtor under all Leases and the CBA; and (ii) compensate the counterparty to the Leases and CBA for any actual pecuniary loss resulting from the Debtor's default, if any.

X.     The Buyer, as assignee of the Debtor's interest in the Leases, and CBA, has demonstrated adequate assurance of future performance under same as required by section

365 (b)(1)(C) and (f)(2)(B).

### Retention of Jurisdiction

Y.     It is necessary and appropriate for this Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Contract, and to adjudicate, if necessary, any and all disputes relating in any way to the transactions provided for under the terms and conditions of the Contract.

## CONCLUSIONS OF LAW

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The relief requested in the Sale Motion, to the extent not already granted or denied in the Bidding Procedures Order, is GRANTED, subject to the terms and conditions contained herein.

2.     All objections, if any, to the Sale Motion or the relief granted herein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits, except as expressly provided herein.

3.     All parties and entities entitled to receive notice of the Sale of the Assets, including all parties that have asserted a claim against or interest in the Assets, have been provided with fair, reasonable and adequate notice of such sale and the Sale Motion.

### Approval of Sale

4.     The Contract, the Debtor's entry into the Contract and the transactions contemplated thereby are hereby approved. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtor is authorized to perform its obligations under the Contract.

5.     The Debtor has advanced sound and sufficient business justification, and it

is a reasonable exercise of the Debtor's business judgment to: (a) sell its right, title and interest in and to the Assets upon the terms and conditions set forth in the Contract; and (b) consummate all transactions contemplated by the Contract.

6. The Debtor shall be and hereby is authorized and directed to fully assume, perform under, consummate and implement the terms of the Contract, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Contract, this Order and the sale of the Assets contemplated thereby, including, without limitation, the execution of any deeds, assignments and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, any or all of the Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as set forth in the Contract, without any further corporate action by the Debtor or orders of this Court. Neither the Buyer nor the Debtor shall have any obligation to proceed with the Closing of the Contract until all conditions precedent to their respective obligations to do so under the Contract and this Order have been met, satisfied or waived.

7. The sale of the Assets and the consideration provided by the Buyer under the Contract is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and other applicable law.

8. Effective as of the Closing, the sale of the Assets to the Buyer shall constitute a legal, valid and effective transfer of the Assets notwithstanding any requirement for approval or consent by any person, and shall vest the Buyer with all right, title and interest of the Debtor in and to the Assets, free and clear of all Interests, Liens or Claims (each as defined

below), pursuant to section 363(b) and (f) of the Bankruptcy Code.

### Good Faith

9.     The Buyer is hereby determined to be a good faith Buyer under § 363(m) of the Bankruptcy Code and shall be entitled to all of the protections afforded by § 363(m) of the Bankruptcy Code. In the absence of a stay pending appeal of this Order, the Buyer shall be acting in good faith within the meaning of § 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Contract, including assumption and assignment of the Leases, pursuant to this Order, at any time after the Closing

### Transfer of Property Free and Clear

10.     The provisions of sections 363(b) and 363(f) of the Bankruptcy Code have been complied with with regard to all creditors asserting mortgages and liens on and/or security interests in the Assets.

11.     Except as otherwise provided for herein or in the Contract, the sale, conveyance and assignment of the Assets to the Buyer pursuant to the Contract, shall be free and clear of any and all charges, conditions, community property interests, options, hypothecations, attachments, conditional sales, title retentions, rights of first refusal, debts, security interests, trusts, claims, pledges or other liens, liabilities, encumbrances or rights of third parties whatsoever (except for such sums that were incurred by the Buyer from and after the closing date), pledges, liens, judgments, hypothecations, attachments, debts, claims, demands, interests leases, tenancies and rights of occupancy (other than the Leases) (collectively, "Interests"), mortgages, encumbrances, or charges of any kind of nature, if any, including, but not limited to, any restriction on the transfer, receipt of income or other exercise of any attributes of ownership (collectively, "Liens") and all debts arising in any way in connection with any acts of the Debtor, claims (including but not limited to as that term is defined in the Bankruptcy Code), obligations,

demands, guaranties, matters of any kind and nature, whether arising prior to or subsequent to the commencement of the Chapter 11 cases (collectively, "Claims"), with all such Interest, Liens, and Claims attaching to the proceeds of the sale in the same priority and to the same extent as such Interests, Liens, and Claims held with regard to the Assets prior to the sale approved herein, and otherwise are herewith released, terminated and discharged as to the Assets.

12.     The Buyer has not assumed or otherwise become obligated for any of Debtor's liabilities except for the assumed Leases. Consequently, all holders of liabilities against the Debtor are hereby enjoined from asserting or prosecuting any Lien, Claim or Interest, or cause of action against the Buyer or the Assets to recover any sum on account of such liabilities. Following the Closing Date, no holder of any Lien, Claim or Interest shall interfere with the Buyer's ownership, use and quiet enjoyment of the Assets based on or related to such Lien, Claim or Interest.

13.     Except as otherwise provided herein, pursuant to sections 105(a) and 363(b) and (f) of the Bankruptcy Code, the Assets shall be transferred to the Buyer on the Closing Date free and clear of all Liens, Claims and Interests of any kind and nature, with all such Liens, Claims and Interests released, terminated and discharged as to the Assets, which Liens, Claims and Interests shall attach to the proceeds of sale, in the order of their priority, with the same validity, force and effect that they now have against the Assets. Nothing contained herein shall be deemed to be an acknowledgment or consent by the Debtor as to the amount, priority or allowance of any claim or the validity, force and effect, or immunity from avoidance of any Lien, Claim or Interest.

14.     The Buyer is not a "successor" to the Debtor or its estate by reason of any theory of law or equity, and the Buyer, its affiliates and subsidiaries shall not assume, nor be

deemed to assume, nor in any way be responsible for any liability or obligation of the Debtor and/or its estate including, but not limited to, any successor liability or similar liability. Neither the purchase of the Assets by the Buyer or its affiliates or subsidiaries, nor the fact that the Buyer or its affiliates or subsidiaries are using any of the Assets previously operated by the Debtor, will cause the Buyer or any of its affiliates or subsidiaries to be deemed a successor in any respect to the Debtor's business within the meaning of any foreign, federal, state or local revenue, pension, tax, labor, employment, environmental or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations and the Employee Retirement Income Security Act), and the Buyer, its affiliates and subsidiaries shall have no liability or obligation on account of any of the foregoing. Moreover, the Buyer shall not be deemed to: (a) be the successor of the Debtor or its estate, (b) have, *de facto*, or otherwise, merged with or into the Debtor, (c) be a mere continuation or substantial continuation of the Debtor or the business of the Debtor, or (d) be liable for any acts or omissions of the Debtor in the conduct of the Debtor's business or arising under or relating to the Assets, and, to that end, the Buyer shall not be liable for any claims, written notices, causes of action, proceedings, complaints, investigations or other proceedings against the Debtor or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date, whether now existing or hereinafter arising, or whether fixed or contingent, with respect to the Assets, the Debtor's business or any obligations of the Debtor, including, without limitation, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Assets and the Debtor's business prior to the Closing Date.

15. Consistent with section 12.1 of the Contract, the Buyer shall have no liability to any broker relating to the sale of the Assets.

16.     Except as otherwise provided for herein, all proceeds from the sale of the Assets shall be held in escrow by counsel for the Debtor and only disbursed in accordance with the Plan and Confirmation Order, cure costs and other claims shall attach to the proceeds from the sale of the Assets and shall be allowed, as determined at a later date by the Bankruptcy Court, in the order of priority set forth under the Bankruptcy Code.

### Assumption and Assignment of Leases

17.     The Debtor's assumption and assignment to the Buyer of the Leases under section 365(b) and (f); (a) is fair and reasonable; (b) is supported by the Debtor's sound business judgment; and (c) is in the best interests of the Debtor's estate and its creditors and, accordingly, is approved.

18.     The sale and transfer of the Assets and the assumption and assignment of the Leases in accordance with this Order (a) will be legal, valid and effective transfers of the Assets and the Leases; (b) will be legal, valid and effective assumption by the Debtor and assignment to the Buyer of the Leases; and (c) will vest the Buyer with all right, title and interest in and to the Leases, free and clear of all Liens, Claims, Interests, encumbrances and other interests.

### Additional Provisions

19.     Each and every federal, state and local governmental agency or department, is hereby directed to accept any and all documents and instruments necessary or appropriate to effectuate the sale of the Assets and the transactions contemplated by the Contract.

20.     Upon the Closing Date each of the Debtor's creditors is authorized and directed to execute such documents and take all other action, as may be necessary, to release its Liens upon or other interests in the Assets. In the event any creditor fails or refuses to release any lien, the Debtor is authorized to execute appropriate releases on such creditor's behalf and

record them to the extent necessary

21.     The Bidding Procedures are incorporated in this Order as if fully set forth herein, including specifically paragraphs 5 (D) through (F) and 6 thereof, with respect to the Back-Up Bidders and the timing under which the Debtor is required to return Deposits to unsuccessful Bidders.

22.     The failure, specifically, to include any particular provisions of the Contract in this Order, shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Contract is approved in its entirety. The Court shall retain sole and exclusive jurisdiction over all matters arising from or related to the Assets, the Motion, the Contract, the implementation thereof, this Order and the Confirmation Order.

23.     This Order and the Contract, as applicable, shall be binding upon, may be enforced against and shall govern the acts of all persons and entities, including, without limitation, the Debtor and the Buyer, their respective successors and permitted assigns, including, without limitation, any trustee hereinafter appointed for the Debtor's estate, all creditors of the Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets. Each and every federal, state and local governmental agency, unit or department is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Assets to the Buyer, and such agency, unit or department may rely upon this Order in consummating the transactions contemplated by the Contract. This Order may be recorded by the Buyer in any registry or government office.

24.     All of the provisions of this Order are nonseverable and mutually

dependent.

25. In the event of a conflict between the provisions of this Order, the Contract, and the Confirmation Order, the provisions of this Order shall govern and control. This Court retains jurisdiction to interpret, implement and enforce the terms and provisions of this Order, including to compel delivery of the Assets, to protect the Buyer against any Lien, Claim or Interest and to enter any orders under sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary or appropriate to transfer the Assets to the Buyer.

Dated: New York, New York
      , 2010

_____
UNITED STATES BANKRUPTCY JUDGE

## DEED

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT – THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.**

---

**THIS INDENTURE,** made the           day of
and

**BETWEEN**

**YL WEST 87TH STREET LLC**

party of the first part, and

**101W87 LLC**

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the seconds part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being more particularly described in Schedule "A" annexed hereto and forming a part hereof.

**TOGETHER** with all right, title and interest, if any, of the party of the first part, in and to any streets and roads abutting the above described

premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first

part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of

the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

[NO FURTHER TEXT ON THIS PAGE; SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____     _____

_____     _____

---

### Acknowledgement taken in New York State

State of New York, County of       ss:

On the    day of   , in the year   , before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

### Acknowledgement by Subscribing Witness taken in New York State

State of New York, County of       ss:

On the    day of   , in the year   , before me, the undersigned, personally appeared

the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who being by me duly sworn, did depose and say, that he/she/they reside(s) in

that he/she/they know(s)
to be the individual described in and who

### Acknowledgement taken in New York State

State of New York, County of       ss:

On the    day of   , in the year   , before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

### Acknowledgement taken outside New York State

*State of New York, County of       ss:
*(or insert District of Columbia, Territory, Possession or Foreign Country)

On the    day of   , in the year   , before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in

executed the foregoing instrument; that said subscribing witness was present and saw said execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto.

his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

(add the city or political subdivision and the sate or country or other place the acknowledgement was taken).

Title No. _____