UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

**YL WEST 87th STREET, LLC,**

Debtor.
-------------------------------------------------------X

Chapter 11

Case No. 09-16786 (AJG)

## PLAN OF LIQUIDATION

The Debtor proposes the following plan of liquidation pursuant to §1121(b) of Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101 et. seq.

### Article I
### Definitions

1.1    Meaning.  For the purpose of this Chapter 11 Plan, each of the terms set forth herein shall have the meaning ascribed below and such meaning shall be equally applicable to the singular and plural forms of the terms defined.  All of the definitions and provisions contained in this Article 1 are, and shall be, regarded as integral, substantive and operative provisions of the Plan.

1.2    Other Terms.  A term that is used in the Plan and not defined herein, but that is defined in the Bankruptcy Code or in the Federal Rules of Bankruptcy Procedure, shall have the meaning set forth therein.  Any reference contained in the Plan to a particular exhibit, paragraph or article shall be deemed to be a reference to an exhibit, paragraph or article of the Plan.

1.3    Rules of Construction.  The rules of construction set forth in §102 of the Bankruptcy Code shall be applicable to all of the provisions of the Plan.  Without in any way limiting the foregoing, as used in the Plan, the words "includes" and "including" are without limitation.

"Additional Payments" shall mean post Filing Date payments made or to be made, when due, by the Secured Lender to Debtor's Counsel, Debtor's Accountant, the Real Estate Broker, pre-Effective Date US Trustee Fees and Committee Counsel.

"Administrative Claim" shall mean a claim incurred after the Filing Date through the Sale Closing Date and Allowed under §§503(b) or 507(a)(2) and (b) of the Bankruptcy Code, all allowances of compensation or reimbursement of expenses to Professional Persons to the extent Allowed by the Court only upon entry of a Final Order under §330 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and any US Trustee Fees.

"Allowed" or "Allowed Amount", when referring to a Claim, shall mean the amount of a Claim

    a.   filed with the Court on or before the Bar Date and as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Final Order or the Plan,

    b.   which has been scheduled by the Debtor as liquidated and not disputed or contingent in amount and as to which no objection to the amount thereof has been interposed within any applicable period of limitation,

    c.   as to which any objection has been interposed, to the extent such Claim has been Allowed by a Final Order, or

    d.   any Claim specifically identified in the Plan as an Allowed Claim.

"Assets" shall mean the Debtor's Real Property, rental income earned from and after the Sale Closing Date, inventory, furniture, fixtures, equipment, interests in the Assumed Executory Contracts and goodwill.

"Assumed Executory Contracts" shall mean the Tenant Leases, contracts related thereto, and the collective bargaining agreement between the Debtor and Local 32BJ of the Service Employees International Union CTW, CLC.

"Ballot" shall mean the form distributed to holders of Claims and Interests on which is to be indicated acceptance or rejection of the Plan.

"Bankruptcy Actions" shall mean all actions and causes of action (and the proceeds thereof), including actions to collect accounts receivable (exclusive of rental income) due the Debtor, whether or not commenced as of the date hereof, whether or not arising under the Bankruptcy Code, including actions and causes of action pursuant to §§544, 547, 548, 549 and 550 thereof, including all claims against creditors for alleged fraudulent transfers under state law utilizing Section 544 of the Bankruptcy Code.

"Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. §101, et. seq., as amended. References to "Sections" are to the corresponding sections of the Bankruptcy Code.

"Bar Date" shall mean September 24, 2010 at 5:00 p.m., the last date fixed by Final Order dated August 12, 2010 (the "Bar Date Order"), for filing proofs of Claim or Interests in the Case, that arose at any time (a) prior to the Filing Date or (b) are based on the Debtor's rejection of the Rejected Executory Contracts after the Filing Date.

"Business Day" shall mean any day on which commercial banks are open for business in New York, New York.

"Buyer" shall mean 101W87LLC or such other entity that shall be the successful bidder at the auction sale to be conducted by the Debtor to sell the Assets, which shall have satisfied its obligations under the Buyer's Contract on the Sale Closing Date.

"Buyer's Contract" shall mean the asset purchase agreement between the Debtor, the Secured Lender and the Buyer to purchase the Assets as approved by the Sale Order.

"Case" shall mean the Debtor's bankruptcy case under chapter 11 of the Bankruptcy Code, filed on November 13, 2009 in the United States Bankruptcy Court for the Southern District of New York, Case No.10-16786.

"Cash" shall mean lawful currency of the United States of America (U.S. dollars), regular check, certified check, bank check or wire transfer from a domestic bank or other cash equivalents.

"Claim" shall have the meaning given to such term in §101(5) of the Bankruptcy Code, as supplemented by §102(2) of the Bankruptcy Code.

"Claimant" or "Creditor" shall mean the holder of a Claim.

"Class" shall mean any category of Claims or Interests as specified in Article III of the Plan.

"Committee" shall mean the Official Committee of Unsecured Creditors of the Debtor approved in the Debtor's Case by the United States Trustee, by pleading dated June 2, 2010 (as such Committee may be reconstituted from time to time).

"Committee Counsel" shall mean Tarter, Krinksy & Drogin LLP, the attorneys retained by the Committee to represent it in this Case, which retention was approved by Final Order dated June 30, 2010, effective, nunc pro tunc as at June 4, 2010.

"Committee Counsel Fund" shall mean $50,000 in Cash deposited by the Secured Lender with Committee Counsel, within two Business Days following the Effective Date, to fund the post Effective Date fees and expenses of Committee Counsel in connection with the prosecution and completion of objections to Claims and the Distribution of the Cash in the Distribution Account to Creditors pursuant to the Plan.

"Confirmation Date" shall mean the date of entry by the Court of the Confirmation Order.

"Confirmation Order" shall mean an order of the Court confirming the Plan in accordance with the Bankruptcy Code.

"Consummation Date" shall mean the date on which all objections to Claims are concluded and payments to Allowed Claims under the Plan shall commence, as provided in section 5.4 below, unless further extended by Court Order.

"Court" shall mean the United States Bankruptcy Court for the Southern District of New York and any appellate or other court that is competent to exercise jurisdiction over any matter or proceeding arising in or relating to the Debtor's Case.

"Debtor" shall mean YL West 87th Street, LLC.

"Debtor's Accountant" shall mean Meisel, Tuteur & Lewis P.C. the accountants retained by the Debtor as its accountants in this Case, which retention was approved by Final Order dated April 6, 2010, effective, nunc pro tunc as at March 17, 2010.

"Debtor's Bankruptcy Counsel" shall mean Marilyn Simon & Associates, the attorneys retained by the Debtor to represent it in this Case, which retention was approved by Final Order dated April 6, 2010, effective, nunc pro tunc as at March 17, 2010.

"Deposits" shall mean the following sums to be paid by the Secured Lender from and after the Sale Closing Date:  (a) $750,000 in Cash deposited into the Distribution Account for pro rata distribution to holders of Allowed Class 3 Claims and Class 4 Claims and (b) the Committee Counsel Fund.

"Disbursing Agent" shall mean Committee Counsel.

"Disputed Claim" shall mean a Claim as to which an objection has been timely filed and which objection (a) is not the subject of a Final Order allowing or disallowing the Claim, and (b) has not been withdrawn.

"Distribution" shall mean Cash that is required under the Plan to be distributed to the holders of Allowed Claims.

"Distribution Account" shall mean the interest bearing depository account held by the Disbursing Agent into which the Deposits shall be deposited.

"Effective Date" shall mean the later to occur of (i) the Sale Closing Date, (ii) the date the Confirmation Order has become a Final Order, or (iii) the date the Sale Order has become a Final Order.

` "Equity Interest" shall mean the equity interest of Garrison Investment Group LP

"Estate" shall mean all of the rights, assets and liabilities accorded the Debtor under the Bankruptcy Code, including Section 541.

"Exclusions to Releases" shall mean gross negligence, willful misconduct, breach of fiduciary duty, *ultra vires* actions, fraud, acts constituting malpractice, criminal conduct, or unauthorized use of confidential information that causes damages.

"Federal Rules of Bankruptcy Procedure" shall mean the Federal Rules of Bankruptcy Procedure in effect on the date of the Plan.

"Filing Date" shall mean November 13, 2009, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code, thereby commencing the Case.

"Final Distribution Date" shall mean the date of the last payment to holders of Allowed Claims in accordance with the provisions of the Plan, which date shall be no later than the

sixtieth (60th) Business Day after the date on which no Claim remains a Disputed Claim, unless such date is extended by a Final Order for cause shown.

"Final Order" shall mean an order of the Court which has not been reversed, stayed, modified or amended and (i) the time to appeal from, or to seek review or rehearing of, has expired, (ii) no appeal, review, certiorari or rehearing is pending, and (iii) the order has become conclusive of all matters adjudicated therein and is in full force and effect.

"Interests" shall mean the Equity Interest of Garrison Investment Group LP, the sole owner of all interests in the Debtor.

"Mechanics Lien(s)" shall mean the Class 3 Claims of vendors or other entities that timely filed valid Mechanics Liens against the Real Property.

"Plan" shall mean this Plan of Liquidation.

"Police Power Claims" shall mean liabilities arising under (i) the environmental laws of the United States, any municipality, city, county or state and (ii) any criminal laws of the United States, any municipality, city, county or state.

"Priority Claim" shall mean any Claim entitled to priority in accordance with §507(a) of the Bankruptcy Code other than an Administrative Claim.

"Professional Fees" shall mean all Claims for fees, costs and expenses of Professional Persons incurred in this Case, which fees, costs, and expenses shall have been awarded by Final Order pursuant to §§330 or 503(b) of the Bankruptcy Code.

'Professional Fee Reserve' shall mean $50,000.00 funded by the Secured Lender and deposited into Debtor's Bankruptcy Counsel's Trust Account to be held at interest and used to fund the payment of fees and expenses to the Debtor's Bankruptcy Counsel and Debtor's Accountant, incurred and earned from and after the Confirmation Date.

"Professional Persons" shall mean all attorneys, accountants, financial consultants and other professional persons retained in this Case by a Final Order within the meaning of §§327 or 1103 of the Bankruptcy Code or otherwise.

"Real Estate Broker" shall mean Eastdil Secured, L.L.C. retained by the Debtor pursuant Final Order dated June 17, 2010, which order fixes the fee payable to the Real Estate Broker at $500,000, which sum shall have been earned if the Sale Closing Date shall have occurred.

"Real Property" shall mean the land and building owned by the Debtor located at 101 West 87th Street, New York, New York.

"Rejected Executory Contracts" shall mean all executory contracts and leases between the Debtor and other parties, excluding the Assumed Executory Contracts.

"Released Parties" shall mean the Committee, the Professional Persons, and only after making the Deposits, the Secured Lender, and each of the affiliates, agents, counsel, advisers, consultants, representatives, investment bankers, other professionals and past, present and future officers, directors, and employees of each of the foregoing.

"Sale Closing Date" shall mean the date on which the Debtor shall close the sale of in the Assets to the Buyer and the proceeds thereof have been paid in Cash to the Secured Lender.

"Sale Order" shall mean an order of the Court approving the Buyer's Contract in the form annexed as Exhibit "E" to the Buyer's Contract.

"Schedules" shall mean the Statement of Financial Affairs and Schedule of Assets, Liabilities, executory contracts and unexpired leases filed by the Debtor with the Court pursuant to Bankruptcy Rule 1007, as such Schedules have been or may be amended from time to time.

"Secured Lender" within the meaning of §506(a) of the Bankruptcy Code, shall mean Garrison Residential Funding LLC, the Claims of which are secured by the Assets.

"Tenant Leases" shall mean the Debtor's leases of the Real Property with its tenant as detailed on Exhibit "K" to the Buyer's Contract.

"Unsecured Claim" shall mean any Claim that is not an Administrative Claim, a Secured Claim, or a Priority Claim and shall include holders of Mechanics Liens.

"US Trustee Fees" shall mean any fees, interest or other charges assessed against the Debtor's Estate under 28 U.S.C. §1930 and 31 U.S.C. §3717.

## Article II
### Provision for the Treatment of Unclassified Claims

2.1 **Administrative Claims**. Administrative Claims are not impaired. The Allowed Amount of such Claims shall be paid in Cash, on the earlier of the Consummation Date or the date such claims become Allowed, or upon such terms as may be agreed upon between the Debtor, the Secured Lender, and the respective Claimant entitled to such payment, or in accordance with a Final Order of the Court.

2.2 **Statutory Fees**. On or before the Effective Date, Administrative Claims for the US Trustee Fees will be paid in Cash equal to the amount of such Administrative Claims. All US Trustee Fees payable after the Effective Date will be paid from the Deposits, until the chapter 11 case is converted or dismissed under §1112, or closed pursuant to §350(a) of the Bankruptcy Code.

## Article III
### Classification of Claims and Interests

3.1 Classes. A Claim is in a particular class only to the extent that the Claim falls within the description of that Class and is in a different Class to the extent that the remainder of the Claim falls within the description of such different Class. In addition, a Claim or Interest is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim.

Class 1 -        Secured Claim

Class 2 -        Priority Claims

Class 3 -        Mechanics Lien Claims

Class 4 -        General Unsecured Claims

Class 5 -        Holder of Interests

3.2     <u>Impaired Claims.</u>  All Classes of Claims are impaired, except for Class 2 Priority Claims and holders of Interests.

**Article IV**

**<u>Treatment of Classes of Claims and Interests</u>**

4.1     <u>Secured Claim.</u>  The Class 1 Claim of the Secured Lender is an Allowed Claim in the amount of not less than $47,529,957.69 as at November 13, 2009.  If the proceeds of sale paid by the Buyer on the Sale Closing Date exceed the amount of $47,529,957.69,  then the amount payable to the Class 1 Claim shall be increased by the Secured Lender's advances to the Debtor from and after November 13, 2009 and other fees and expenses due to the Secured Lender under the Pre-petition Secured Loans, including post-petition interest and other charges unpaid by the Debtor calculated through and including the Sale Closing Date, up to but not to exceed the amount of the proceeds of sale paid by the Buyer on the Sale Closing Date, pursuant to §506(b) of the Bankruptcy Code.  The Class 1 Claim shall be satisfied, settled and discharged, in full, by:

a.      the retention of the net proceeds of the sale of the Assets up to the Allowed Amount of its Claim, less expenses, including costs to cure the Assumed Executory Contracts, and payment of (i) the Real Estate Broker's Fee, (ii) Allowed Administrative Claims, (iii) the Allowed Class 2 Claims, and (iv) the Deposits; or

b.      distribution to the Secured Lender of the Assets on which such Secured Lender holds a Secured Claim, free and clear of all Mechanics Liens, Priority Claims and Unsecured Claims, provided that holders of Priority Claims and Unsecured Claims are paid the amount for which provision is made for them in the Plan; or

      c.     upon such terms as may be agreed upon between the Debtor and the holder of the Secured Claim, provided such treatment shall not impair or affect the rights of holders of Unsecured Claims under the Plan;

in each case the election shall be made upon agreement between the Debtor and the Secured Lender prior to the Confirmation Date or on such other date as agreed to by the Debtor and the Secured Lender.

      4.2    <u>Priority Claims.</u>   Each Class 2 Claim shall be satisfied, settled and discharged, in full, by the payment of 100% of such Priority Claim in full, in Cash on the earlier of the Effective Date or the date such Priority Claim becomes Allowed, or upon such terms as may be agreed upon between the Debtor and the respective Claimant entitled to such payment.

      4.3    <u>Mechanics Lien Claims.</u> Each Class 3 Claim shall be treated as a Class 4 Unsecured Claim, provided, however, if the net proceeds paid to the Secured Lender on the Sale Closing Date exceed the Allowed Amount of the Class 1 Claim, such excess shall be paid to holders of Mechanics Lien Claims on a pro rata basis and the remaining balance, if any, due such Class 3 Claims shall be treated as Class 4 Claims.

      4.4    <u>Unsecured Claims.</u> The Holders of Allowed Unsecured Claims shall be paid their pro rata share of the Deposits,  the unconsumed portion, if any, of the Committee Counsel Fund, plus ten (10%) percent of the increase, if any, of the gross proceeds of sale of the Assets on the Sale Closing Date, in excess of $50,500,000.00.

      4.5    <u>Interests.</u> The holders of Class 5 Equity Interests shall retain such Interests, but said Interest holders shall receive no payment or other distribution under the Plan.

**Article V**

**<u>Means for Execution of the Plan</u>**

5.1    The Debtor and the Secured Lender shall enter into the Buyer's Contract to sell the Assets for $48,000,000.00 to Buyer, subject to higher bids at an auction sale to be scheduled by the Bankruptcy Court.  The Debtor shall sell the Assets to the highest bidder at the auction sale.

5.2    The Deposits shall be delivered by the Secured Lender to the Disbursing Agent on the Effective Date.  The Disbursing Agent shall make the Distributions provided for under the Plan to Unsecured Creditors on the Consummation Date and shall pay the post Effective Date fees and expenses of Committee Counsel from the Committee Counsel Fund.  The costs and expenses of Committee Counsel to review and examine the validity of the Secured Lender's lien shall not be paid by the Secured Lender directly, but shall be paid from the Committee Counsel Fund.  The Court shall determine any disputes in connection therewith.

5.3    Committee Counsel shall file and prosecute all objections to Claims, except for (a) the Secured Claim, which shall be deemed allowed in full and (b) Priority Claims and Administration Claims, which objections, if any, shall be filed and prosecuted by Debtor's Bankruptcy Counsel. The Debtor's Bankruptcy Counsel shall continue to represent the Estate in all litigation, adversary proceedings and contested matters, if any, commenced prior to and after the Confirmation Date.

5.4    Distributions to the holders of Unsecured Claims under the Plan shall commence within sixty (60) days after the completion of all objections to claim.

5.5    The Professional Persons shall continue to render such services as may be necessary and appropriate until the Final Distribution Date.  From and after the Final Distribution Date, Committee Counsel shall (a) retain the Distribution Account for up to one hundred twenty (120) days after the Final Distribution Date, (b) treat the unclaimed funds in the manner for which

provision is made in paragraphs 5.12 and 5.18 hereof, and (c) thereafter move the Bankruptcy Court to close the Case.

5.6     Unpaid fees and expenses of Professional Persons earned prior to the Effective Date shall be paid to them by the Secured Lender in accordance with orders of the Court, except as set forth in the last sentence of paragraph 5.2 hereof.  Fees and expenses of Committee Counsel earned after the Effective Date, including fees and expenses related to their services as Disbursing Agent and all other fees and expenses required to fulfill Committee Counsel's obligations under this Plan, shall be paid out of the Committee Counsel Fund.  Fees and expenses of the Debtor's Professional Persons earned after the Effective Date shall be paid by the Secured Lender within twenty (20) days after the issuance of the invoice unless an objection thereto is made. In such event, the Professional Person may file an application for allowance with the Court and shall be paid in accordance with a Final Order of the Court.

5.7     Prior to receipt of the Deposits, the Disbursing Agent shall obtain a defalcation bond from a surety company recognized by the United States Trustee for funds held pursuant to the Plan.  The costs for such bond shall be paid for by the Secured Lender.

5.8     Distributions to holders of Allowed Unsecured Claims pursuant to the Plan shall be paid by checks drawn on the Distribution Account.  The Confirmation Order (and any subsequent Final Orders) shall be a final determination of the rights of all Claimants and Interest holders to participate in the Distributions under the Plan, whether or not (a) a proof of claim is filed or deemed filed under §501 of the Bankruptcy Code, (b) such Claim is an Allowed Claim, or (c) the holder of such Claim has accepted the Plan.  The Disbursing Agent shall make Distributions to holders of Allowed Unsecured Claims only in accordance with the Plan.  Distributions of Cash pursuant to the Plan shall be rounded down to the nearest whole cent.

5.9     All Bankruptcy Actions are expressly waived, as well as all related rights under 11 U.S.C. §502(d).

5.10    <u>Objections to Claims</u>.

a.      <u>Unsecured Claims.</u>  The Committee, through Committee Counsel, shall have the exclusive right for ninety (90) days, following the Effective Date, or during such additional time requested for cause shown and authorized by Final Order, to object to any and all Unsecured Claims and to litigate, settle or withdraw any objection to Unsecured Claims that are Disputed Claims. Unless otherwise ordered by the Court, or agreed to by written stipulation approved by a Final Order, or until the objection thereto is withdrawn or contested matter or adversary proceeding dismissed, Committee Counsel may litigate the merits of each Disputed Unsecured Claim until determined by Final Order.  Any Unsecured Claim for which no objection or contested matter or adversary proceeding addressed on or before ninety (90) days after the Effective Date, unless such date is extended by the Court for cause, shall be deemed an Allowed Unsecured Claim in such amount as (i) is set forth in a proof of claim filed with the Court, or (ii) if no proof of claim is filed, as listed in the Schedules filed by the Debtor with the Court pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure and not identified as disputed, contingent or unliquidated as to amount.  Committee Counsel may review the filed Unsecured Claims with Debtor's Bankruptcy Counsel, and shall assert and prosecute objections to Disputed Unsecured Claims as appropriate in accordance with this paragraph.

b.      <u>Priority Claims.</u>  Debtor's Bankruptcy Counsel, shall have the exclusive right for ninety (90) days, following the Effective Date, or during such additional time requested for cause shown and authorized by Final Order, to object to any and all Priority Claims and to litigate, settle or withdraw any objection to Priority Claims that are Disputed Claims. Unless otherwise

ordered by the Court, or agreed to by written stipulation approved by a Final Order, or until the objection thereto is withdrawn or contested matter or adversary proceeding dismissed, Debtor's Bankruptcy Counsel may litigate the merits of each Disputed Priority Claim until determined by Final Order. Any Priority Claim for which no objection or contested matter or adversary proceeding addressed to a Priority Claim has been filed on or before ninety (90) days after the Effective Date, unless such date is extended by the Court for cause, shall be deemed an Allowed Priority Claim in such amount as (i) is set forth in a proof of claim filed with the Court, or (ii) if no proof of claim is filed, as listed in the Schedules filed by the Debtor with the Court pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure and not identified as disputed, contingent or unliquidated as to amount.

5.11     Payments and Distributions on Disputed Claims.

a.      Notwithstanding any other provision of the Plan, no Distributions will be made with respect to a Disputed Unsecured Claim until resolution of objections to all Disputed Unsecured Claims  by a Final Order.

b.      In addition, Committee Counsel may at any time request that the Court estimate any Claim, including personal injury Claims, under §502(c) of the Bankruptcy Code, regardless of whether such Claim has been previously objected to, or whether the Court has ruled on any such objection.  In the event that the Court estimates any Claim, the estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Court.

5.12     Unclaimed Distributions. Unclaimed Distributions (including Distributions made by checks which fail to be negotiated) shall be retained by the Disbursing Agent and held in trust for the beneficial holders of Allowed Claims entitled thereto for a period of ninety (90) days

after the date said Distribution is made. Any Distribution remaining unclaimed ninety (90) days after the Distribution date shall be canceled (by a stop payment order or otherwise) and the Unsecured Claim related to such unclaimed Distribution shall be deemed waived and expunged as a Claim, the aggregate amount representing said unclaimed Distributions shall be deposited in the Committee Counsel's Fund, following ten (10) Business Days written notice thereof to the beneficial holders of such Distribution at their last known address, and said sums shall be redistributed to the remaining holders of Class 4 Claims on a pro rata basis.

      5.13   <u>Mailing of Distributions.</u> All Distributions shall be made by check and shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid, to the holders of Claims at the address listed on their respective proofs of Claim filed with the Court, or if no proof of Claim was filed, the latest mailing address filed by the holder of an Allowed Claim entitled to a Distribution, or if no such mailing address has been filed, the mailing address reflected on the Debtor's Schedules heretofore filed herein, whichever is most recent.

      5.14   Allowed Professional Fees and expenses and disbursements incurred by the Creditors' Committee in connection with Objections to Claims and the calculation and mailing of Distributions, shall be paid first, from the Committee Counsel Fund and if said Fund is fully consumed, then, after first obtaining approval of the Bankruptcy Court, from the $650,000 Cash deposited in the Distribution Account.

      5.15   Notwithstanding any other provision of the Plan, including, without limitation, paragraphs 5.10 and 5.14, above, no entity shall have any right or authority to assert or prosecute any claims, causes of action or rights specifically released pursuant to the terms of the Plan or the Confirmation Order.

5.16    Set-offs.  The Disbursing Agent or the Committee Counsel may, but shall not be required to, set-off any Claim of any nature whatsoever the Debtor may have, against the Distribution to be made a Claimant under the Plan.

5.17    Saturday, Sunday or Legal Holiday.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

5.18    Fractional Cents; Multiple Distributions.  Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash will be issued to holders entitled to receive a Distribution of Cash in whole cents (rounded down to the nearest whole cent).  To the extent that cash remains undistributed as a result of rounding down of such fractions, such Cash shall be retained by Committee Counsel and deposited in the Committee Counsel Fund.

5.19    Post Confirmation Reports.  Post confirmation reports until the Effective Date shall be prepared and filed by Debtor's Bankruptcy Counsel.  Post confirmation reports from and after the Effective Date shall be prepared and filed by Committee Counsel.  Post Effective Date US Trustee Fees shall be paid by the Disbursing Agent, from funds in the Deposits.

5.20    Immediately following the Final Distribution Date, funds, if any, remaining in the Professional Fee Reserve after payment of all billed and unpaid Professional Fees due to Debtor's Bankruptcy Counsel and Debtor's Accountants shall be returned to the Debtor.

## Article VI
## The Professional Persons

6.1     The Professional Persons (including Committee Counsel in its capacity as Disbursing Agent) shall incur no liability whatsoever for any action taken, or failure to act, except for the Exclusions to Releases.

a.      In the performance of their duties hereunder, they shall be entitled to rely upon any document, instrument or signature reasonably believed to be genuine.

b.      They may assume that any party purporting to give any notice in writing has been duly authorized to do so.

c.      The Disbursing Agent shall obtain insurance or a similar form of surety, paid by the Secured Lender, by a surety recognized by the United States Trustee, which shall indemnify the Disbursing Agent for and hold it harmless against any loss, liability or expense incurred on the part of said entity, except for the Exclusions to Releases, in carrying out its duties hereunder, including the costs and expenses of defending itself against any claim of liability.

d.      The provisions of subparagraph (c) of this Article 6.1 shall survive the termination of the Plan.

6.2     Committee Counsel shall prepare and maintain Distribution schedules with respect to Unsecured Claims, including Disputed Claims, as soon as practicable following the Effective Date, but no later than the Consummation Date.  Committee Counsel shall update the Distribution schedules as Disputed Claims become Allowed Claims.  Except as otherwise agreed by the affected Claimant or as estimated under a Final Order, until entry of a Final Order with respect to a Disputed Claim, the entire amount of the Disputed Claim shall be included in the schedules for purposes of computing the Distributions payable to Unsecured Claims under Article IV of the Plan.  When all objections to Claims have been resolved by a Final Order the Disbursing Agent shall distribute the funds in the Distribution Account on the Final Distribution Date, to the Claims Allowed thereunder.

6.3     Termination of Duties of the Disbursing Agent.  Upon the completion of the Distribution of the funds in the Distribution Account in accordance with the Plan, the duties, powers, responsibilities and rights of the Disbursing Agent shall terminate, ipso facto.

## Article VII
## The Committee

7.1     The Committee shall continue after the Effective Date, subject to the provisions of paragraph 7.5 below, and shall act by a majority vote of its members present and voting, either with or without formal meetings.

7.2     Subject to §1127 of the Bankruptcy Code, the Committee shall have the power and right, upon such terms and conditions as the Committee may determine, to waive, modify or excuse performance of any of the covenants of the Debtor or the Secured Lender set forth in the Plan, but such waiver or excuse shall not be deemed to constitute a waiver of any other term or provision of the Plan or waiver or excuse of the same covenant on a different occasion.

7.3     Members of the Committee and their designees shall serve without compensation.  However, the Disbursing Agent shall reimburse each member of the Committee for all reasonable post-Effective Date out-of-pocket expenses or disbursements incurred by such member or designee in the performance of his or her duties as a member of the Committee, or a designee thereof from the Cash deposited in the Distribution Account.

7.4     Neither the Committee nor any member of the Committee, Committee Counsel, or any of its employees, professionals or agents, shall be liable for any action taken, or failure to act as a member of the Committee, except for such acts identified in the Exclusions to Releases.

7.5     The duties, powers, responsibilities and rights of the Committee and its agents shall terminate, ipso facto following the Final Distribution Date, provided however, that

Committee Counsel shall ascertain the balance, if any, in the Distribution Account and perform the steps required in accordance with Article V hereof.

## Article VIII
### Executory Contracts and Unexpired Leases

8.1 <u>Executory Contracts.</u> The Assumed Executory Contracts shall be assumed by the Debtor and assigned to the Buyer upon the Sale Closing Date, following appropriate notice by the Debtor to the other parties to the Assumed Executory Contracts, which notice shall identify the Tenant Leases and include the amount proposed to cure defaults, if any.

8.2 The Secured Lender shall be responsible for and shall pay to the entity entitled thereto, any cost to cure defaults under the Assumed Executory Contracts as determined by Final Order on or before to the Sale Closing Date.

8.3 The Rejected Executory Contracts, shall be rejected by the Debtor, the other parties thereto shall be notified of such rejection and claims for rejection damages, if any, shall be included in Class 4 Unsecured Claims.

## Article IX
### Injunction and Release

**9.1 Except (i) with respect to the Exclusions to Releases and (ii) as otherwise expressly provided in the Plan, the Confirmation Order shall operate as an injunction against the commencement or continuation of any action or the employment of any process to collect, offset or recover any sums against the Released Parties or the Debtor with respect to**

> **a. any Claim, or interest thereon, whether or not a proof of Claim is filed or deemed filed under §501 of the Bankruptcy Code, such Claim or interest becomes an Allowed Amount under §502 of the Bankruptcy Code or the holder of such Claim has accepted the Plan, and whether or not such Claim is reduced to judgment, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arises or may arise**

from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, and

b. any liability of a kind specified in §§502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not a proof of claim is filed or deemed filed under §501 of the Bankruptcy Code, such Claim becomes an Allowed Amount under §502 of the Bankruptcy Code, or the holder of such Claim has accepted the Plan.

c. Nothing contained in the releases granted under the Plan shall release any party from the Exclusions to Releases, including any attorney from his or her obligations pursuant to Disciplinary Rule 6-102 of the New York Lawyer's Code of Professional Responsibility.

**9.2** **General Injunction.** Exclusive of any applications or appeals pending as of the Confirmation Date, all holders of Claims against or Interests in the Debtor shall forever be enjoined from the commencement or continuation in any manner, of any action or other proceeding of any kind, the employment of process, or other act to assert a Claim for relief against the Released Parties or the Debtor, in respect of:

a. Any actions taken during the course of the Debtor's Case;

b. The Plan;

c. The authorization for or the formulation, negotiation, confirmation or consummation of the Plan;

d. Distributions, payments or transfers made under and in accordance with the provisions of the Plan;

e. Any other matter, claim, cause of action, right or liability released pursuant to the Plan including paragraph 9.6 below; or

f. Acts performed pursuant to the Plan.

9.3 Injunction Against Recording and Taxing Authorities. As of the Effective Date, any and all federal state and local taxing authorities shall be permanently enjoined from the

commencement or continuation of any action to collect any transfer taxes from the Debtor to the fullest extent permitted under §1146(a) of the Bankruptcy Code, and the Confirmation Order shall so provide**.**

        9.4     <u>Discharge of Professionals.</u>  The Professional Persons retained pursuant to Final Order of the Court shall be discharged of and from their responsibilities and obligations under the Plan, automatically and without further act or deed on the part of any entity, following the clearance payments to be made under the Plan.

        9.5     The automatic stay pursuant to §362 of the Bankruptcy Code shall continue in effect until the funds in the Distribution Account have been fully distributed under the Plan. However, Professional Persons and Claimants shall be permitted to file appropriate actions with the Court to compel payments provided by the Plan.

        **9.6**     <u>**Limitation of Liability**</u>**. Except as expressly set forth herein or in the Confirmation Order and without limiting the scope or effectiveness of the releases granted in the Plan, effective on the Final Distribution Date, none of Released Parties shall have or incur any liability for any actions taken or omitted to be taken before the Filing Date under or in connection with, related to, affecting or arising out of their dealings with the Debtor, any of the Debtor's operations, the filing of the chapter 11 petition, the Case, the administration of the Debtor's Cash, Assets, real and personal property, the negotiation, implementation, pursuit of confirmation of the Plan, the Consummation and administration of the Plan, the sale or refinancing of the Debtor's Assets, including the Real Property, except for such acts identified in the Exclusions to Releases, and in all respects, the Released Parties shall be entitled to rely upon the advice of counsel with respect to his, her or its duties and responsibilities under the Plan.  The Plan shall constitute a release among the Creditors and**

the Released Parties by all past, present or future holders of Claims or Interests, directly or indirectly, to effect the foregoing, effective as of the Confirmation Date, but subject to the occurrence of the Final Distribution Date, and the Confirmation Order shall so provide.

9.7     Notwithstanding anything to the contrary contained in this Article IX or in the Plan, none of the injunctions and releases provided for in the Plan shall limit, adversely affect or otherwise impair the right of

a.      governmental authorities to assert Police Power Claims, as appropriate, against any entity, or

b.      any third parties to assert and pursue claims against indemnitors (other than the Debtor or the Secured Lender) under indemnity agreements, regardless of whether the Debtor or the Secured Lender was a party to such indemnity agreements.

c.      the United States Government or any of its agencies to assert any claim against the Released Parties, including without limitation any claim arising under the Internal Revenue Code, the environmental laws, or the criminal laws of the United States, nor shall anything in the Confirmation Order or Plan limit, impair, or in any way affect the application of any laws or regulations of the United States.

## Article X
### Miscellaneous Provisions

10.1    Effect of Confirmation.    The Distributions and other treatment afforded holders of Claims and Interests under the Plan shall be the only payments received by the holders of Claims against and Interests in the Debtor.

10.2    Entire Agreement.    The Plan, the Confirmation Order, the Sale Order, including any exhibits annexed thereto, set forth the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents.  No party shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the Plan other than as are expressly provided for herein.  Should

any provision in the Plan be determined to be unenforceable by a court of competent jurisdiction, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan. The duties, rights and obligations of any person or entity named or referred to in the Plan shall be binding upon, inure to the benefit of and shall be the responsibility of, the successors and assigns of such person or entity.

      10.3    <u>Headings.</u>  The headings of the Articles, paragraphs and sections of the Plan are inserted for convenience only and shall not affect the interpretation thereof. The Plan, including any exhibits and other attachments hereto, shall constitute the entire Plan, subject to amendment or modification solely as provided herein. Article I of the Plan is and shall be regarded as an integral, substantive and operative part of the Plan.

      10.4    <u>Post-Consummation Effectiveness of Evidence of Claims or Interests</u>. Evidence of Claims or Interests shall, upon the Effective Date, represent only the right to participate in the Distributions contemplated by the Plan and otherwise shall have no further force or effect.

      10.5    <u>Modification of the Plan</u>. The Debtor may amend or modify the Plan in accordance with §1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. On or before substantial consummation of the Plan, the Debtor or the Committee may issue, execute, deliver or file with the Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

      10.6    <u>Payment of Statutory Fees</u>. All US Trustee Fees, as determined by the Court at the Confirmation Hearing, incurred by the Debtor up to the Effective Date, shall be paid by the Secured Lender on or before the Effective Date and shall be paid by the Disbursing Agent out of the

Distribution Account from and after the Effective Date until a Final Decree is entered in this Case, or the Court otherwise orders. Debtor's Bankruptcy Counsel shall submit U.S. Trustee quarterly fee status reports with each quarterly fee paid up to and including the Effective Date. Committee Counsel shall submit U.S. Trustee quarterly fee status reports with each quarterly fee paid after Effective Date.

      10.7   <u>No Interest or Attorneys' Fees</u>. Unless otherwise specifically provided for in the Plan or Confirmation Order or Allowed by a Final Order of the Court, pre-Filing Date interest shall not accrue or be paid on Claims, and no holder of a Claim or Interest shall be entitled to such interest or any penalty or late charge accruing on or before the Filing Date. Interest, if any, claimed by Class 2 New York State and New York City real estate tax Claims shall accrue and be paid by the Secured Lender on or promptly after the Sale Closing Date in accordance Article 4.2 hereof. Interest shall not accrue or be paid upon any other Claim. No attorneys' fees will be paid under the Plan with respect to any Claim or Interest, except as expressly specified herein or Allowed by a Final Order of the Court.

      10.8   <u>Defenses with Respect to Claims</u>. Except as otherwise provided in the Plan, nothing shall affect the rights and legal and equitable defenses of the Debtor or the holder of a Disputed Claim with respect to any and all Claims, including but not limited to, all rights in respect of legal and equitable defenses to setoffs or recoupments against Claims.

      10.9   <u>Failure of Court to Exercise Jurisdiction</u>. If the Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of this Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

10.10   <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or any other federal law is applicable or to the extent the law of a different jurisdiction is validly elected by the Debtor, the rights, duties and obligations arising under the Plan shall be governed in accordance with the substantive laws of the United States of America and, to the extent federal law is not applicable, the laws of the State of New York.

10.11   <u>Notice.</u>  Any notice described in or required by the terms of the Plan shall be deemed to have been properly given (a) if mailed, five (5) days after the date of mailing, or (b) if sent via facsimile, on the date of the transmission confirmation, to

> The Debtor
> c/o its Attorneys,
> Marilyn Simon & Associates
> 110 East 59th Street, 23rd floor
> New York, New York 10022
> Facsimile # (212) 759-7690
> Attn:  Marilyn Simon, Esq.
>
> The Committee
> c/o its Attorneys
> Tarter, Krinsky & Drogin LLP
> 1350 Broadway
> New York, New York 10018
> Attn:  Scott Markowitz, Esq.
>
> The Secured Lender
> c/o its Attorneys
> Paul, Hastings, Janofsky & Walker LLP
> 75 East 55th Street
> New York, NY 10022-3205
> Attn:  Harvey A. Strickon, Esq.

or to such other address as the recipient may give written notice of in accordance with the provisions of this paragraph of the Plan.

10.12   Substantial Consummation.   The Plan will be deemed substantially consummated, as such term is used in §1101(2) of the Bankruptcy Code, upon the commencement of Distributions to the holders of any class of Claims under the Plan.

10.13   Continuation of Prior Orders.   Entry of a Confirmation Order shall not supercede or affect any prior Orders entered by the Court.

10.14   Reservation of Rights. In the event that the Plan is not confirmed or the Effective Date does not occur, the rights of all parties in interest in the Case shall be reserved in full.

**Article XI**

**Events of Default and Remedies**

11.1   The failure by the Debtor, the Disbursing Agent, the Debtor's Bankruptcy Counsel or Committee Counsel to comply with any covenant or perform any material provision of the Plan or to make any required payments due under the Plan and continuation of such failure for ten (10) days after notice thereof to the foregoing parties and the defaulting entity, shall constitute an "Event of Default" under the Plan.

11.2   If the Secured Lender defaults in its obligations to fund the Plan within ten (10) Business Days of receipt of written notice thereof, such notice not to be sent prior to the Effective Date, the Debtor, the Committee and any affected party, including the Buyer may immediately seek action against the Secured Lender and its affiliates to obtain appropriate relief, including but not limited to sanctions, interest, and other effective relief.

**Article XII**

**Covenants of the Debtor**

The Debtor agrees to

a.      fully cooperate with Committee Counsel and the Disbursing Agent with respect to the funding of the distribution to Creditors provided under the Plan; and

b.      assist in carrying out the terms of the Plan, at no cost to the estate, including providing any necessary testimony and assistance with objections to claims, including any books and records that may be available.

## Article XIII

## Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date, substantial consummation, or the closing of the Case, the Court shall retain and have jurisdiction of this proceeding under the provisions of the Bankruptcy Code, including, without limitation, §1142(b) thereof and of the Federal Rules of Bankruptcy Procedure, and all matters arising out of, and related to the Case and the Plan, and to ensure that the intent and the purpose of the Plan is carried out and given effect.  Without limitation by reason of specification, the Court shall retain and have jurisdiction for the following purposes:

a.      To consider any modification of the Plan pursuant to §1127 of the Bankruptcy Code and/or any modification of the Plan after substantial consummation thereof,

b.      To hear and to determine:

(i)      all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan,

(ii)      all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claims or Interests and the Debtor or Committee Counsel,

(iii)      all claims and causes of action which may exist on behalf of the Debtor. excluding the Bankruptcy Actions,

(iv)      applications for allowance of compensation and objections to Claims which have been or may be timely asserted in accordance with orders of the Court or the Plan,

(v)     any and all pending applications, adversary proceedings, litigated matters and contested matters, and

(vi)    matters concerning state, local and federal taxes in accordance with §§345, 505 and 1146 of the Bankruptcy Code.

b.      To ensure that Distributions are accomplished as provided herein, and to resolve any dispute or issue concerning Distributions,

d.      To protect the property of the Estate and the Assets from adverse claims or interference inconsistent with the Plan,

e.      To interpret and enforce orders previously entered in the Case to the extent such orders are not superseded or inconsistent with the Plan,

f.      To hear, determine and resolve any actions or controversies by or against the Debtor or the Committee or the conduct, action, inaction or omission of the Debtor, or the Committee or their respective counsel after the Effective Date, and

g.      To perform any other functions set forth in the Confirmation Order.

Dated:      New York, New York          YL WEST 87TH STREET, LLC
            November 4, 2010


            By:    /s/Julian Weldon_____
                   Julian Weldon, a director of
                   Garrison Residential Funding II LLC,
                   the sole member of the Debtor

CONSENTED AND AGREED TO;
ON BEHALF OF THE SECURED LENDER
GARRISON RESIDENTIAL FUNDING LLC



By /s/Julian Weldon_____